IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AARON BOOTHE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:21-CV-1766-D |
| VS. | § | |
| | § | |
| EQUIFAX INFORMATION | § | |
| SERVICES LLC, | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS, INC., | § | |
| TRANS UNION LLC, and | § | |
| NATIONSTAR MORTGAGE LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by plaintiff Aaron Boothe ("Boothe") against several defendants under various provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* As pertinent to the instant motion, Boothe alleges that defendant Trans Union LLC ("TransUnion") is liable under 15 U.S.C. § 1681e(b) for providing a credit report that incorrectly stated that he was late on a mortgage payment, thus misrepresenting his creditworthiness, and under § 1681i for failing to update or delete inaccurate information in his credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnishers, failing to maintain reasonable procedures with which to filter and verify disputed information in his credit file, and relying on verification from a source that it has reason to know was unreliable. TransUnion moves to dismiss Boothe's complaint under Fed. R. Civ. P. 12(b)(6) for failure

to state a claim on which relief can be granted.  For the following reasons, the court grants the motion but also grants Boothe's alternative request for leave to amend.

I

In January 2019 Boothe took out a mortgage with Rushmore Loan Mortgage Servicing.[1]  His mortgage was then acquired by Nationstar Mortgage LLC ("Nationstar") and assigned loan number 66863****.[2]  In October 2019 Boothe asked Nationstar for a payoff quote, which Nationstar provided.  The payoff quote listed the payoff amount for the 66863****mortgage and included the following question and answer among the "FREQUENTLY ASKED QUESTIONS":

> Should I continue to make my scheduled payments?
>
> Yes, continue to make your scheduled payments.  If your payoff payment is received after your payoff date and a payment has not been made, then a late charge may be assessed and added to the payoff amount due.  So, please don't stop payment prior to your payoff closing date.  Note that if any payment previously made to this account is returned for any reason, the payoff amount will be insufficient.

Compl., Ex. B.[3]  Later that same month, Boothe also refinanced his mortgage loan with

---

[1]In deciding TransUnion's Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to Boothe, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]Parts of the actual account number are redacted in the record and in this memorandum opinion and order per Rule 5.2(a)(4).

[3]The court may consider the payoff quote on this motion to dismiss because it is attached to Boothe's complaint.  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) ("The court's review [of a Rule 12(b)(6) motion] is limited

Nationstar, which was assigned loan number 5856****.

Boothe paid the payoff amount on November 1.  In March 2021 Boothe pulled his credit reports, which stated that he had a late payment on the 66863**** mortgage in October 2019.  After disputing the alleged inaccuracy with defendant credit reporting companies, the companies investigated but did not change their reports.  Boothe subsequently filed the present suit.

Boothe asserts claims under 15 U.S.C. § 1681e(b) and § 1681i against defendants TransUnion, Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian").[4]  He also alleges a claim under § 1681s-2(b) against defendant Nationstar.  TransUnion now moves under Rule 12(b)(6) to dismiss Boothe's claims against it asserted under § 1681e(b) and § 1681i.  Boothe opposes the motion, and, in the alternative, requests leave to amend.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [Boothe's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (alteration in original) (internal

---

to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

[4]Although Boothe's complaint asserts these claims against Equifax, Boothe and Equifax appear to have settled their dispute.

quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive TransUnion's motion to dismiss under Rule 12(b)(6), Boothe must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court considers whether Boothe has plausibly pleaded a claim against TransUnion under § 1681e(b) or § 1681i.[5]

A

TransUnion contends that FCRA claims under § 1681e(b) and § 1681i require a

---

[5]Because TransUnion seeks to dismiss Boothe's claims against it for the same reason—that its credit report was accurate—the court addresses these claims together.

plaintiff to plead a factual inaccuracy in his credit report , and that, although Boothe alleges that he did not make a late payment (and the credit report is therefore inaccurate), this allegation is contradicted by evidence contained in exhibits attached to Boothe's complaint. In support, TransUnion points to a part of the payoff quote that informs the mortgagor to continue making monthly mortgage payments.  It maintains that this suggests that the payoff quote did not suspend Boothe's obligation to continue making mortgage payments, and his failure to make the October payment made his subsequent payment untimely.

Boothe responds that TransUnion is reading the payoff quote too narrowly.  He posits that the payoff quote states that he "would only be considered 'late'" for the preceding month if he missed the payoff quote deadline, P. Mem. at 2 (emphasis omitted); that the TransUnion credit report stated that he was current for October on his refinanced loan number 5856****, but was late for October on loan number 66863**** —creating an inconsistency that suggests that the TransUnion report is inaccurate; and that his § 1681i cause of action should not be dismissed because his claim that TransUnion did not reasonably investigate his dispute requires discovery.

B

To state a plausible claim under § 1681e(b) and §1681i, Boothe must plead that TransUnion's credit report contained a factual inaccuracy. Section 1681e(b), which governs a credit reporting agency's duties to maintain accurate information *ex ante*, provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning

- 5 -

the individual about whom the report relates." 15 U.S.C. § 1681e(b).  Section 1681i governs

a credit reporting agency's duties *ex post* if the accuracy of its report is disputed.  It provides:

> [i]f the completeness or accuracy of any item of information
> contained in a consumer's file at a consumer reporting agency
> is disputed by the consumer and the consumer notifies the
> agency directly, or indirectly through a reseller, of such dispute,
> the agency shall, free of charge, conduct a reasonable
> reinvestigation to determine whether the disputed information
> is inaccurate . . . .

15 U.S.C. § 1681i(a)(1)(A).

To state a plausible § 1681e(b) claim, a plaintiff must plead that the credit report

contained an inaccuracy.[6]  Section 1681e(b)—which focuses on reasonable procedures to

ensure accurate reporting—does not explicitly require that the reporting be accurate, just that

the procedures used in making the report "maximize possible accuracy."  *See* 15 U.S.C. §

1681e(b).  The law is well-settled that an inaccuracy in the report is required.  *See*

*Washington v. CSC Credit Servs. Inc*., 199 F.3d 263, 267 n.3 (5th Cir. 2000) (suggesting that

"[i]n order to make out a prima facie violation under § 1681e(b), a consumer must present

evidence tending to show that a credit reporting agency prepared a report containing

inaccurate information." (citation omitted) (internal quotation marks omitted)); *Jett v.*

---

[6]The court does not address the other elements of these claims (such as whether
TransUnion took reasonable measures to ensure accuracy) because these elements are not in
dispute.  *See Norman v. Experian Info. Sols., Inc*., 2013 WL 1774625, at *3 (N.D. Tex. Apr.
25, 2013) (Boyle, J.) (discussing § 1681e(b) elements); *Zala v. Trans Union, LLC*, 2001 WL
210693, at *4 (N.D. Tex. Jan. 17, 2001) (Fitzwater, J.) (discussing § 1681i elements).
TransUnion seeks to dismiss Boothe's claim on the narrow ground that he has not pleaded
that its report was inaccurate.

*Experian Info. Sols., Inc.*, 2014 WL 2587613, at *3 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) ("To establish liability under § 1681 e(b), Jett must prove that Experian or Trans Union included inaccurate information in her credit report . . . ."), *rev'd on other grounds*, 614 Fed. Appx. 711 (5th Cir. 2015).

Similarly, to state a plausible § 1681i claim, a plaintiff must plead that the credit report contained an inaccuracy. Section 1681i focuses on the reasonableness of the credit reporting agency's actions *after* a consumer disputes the accuracy of the report—but it does not explicitly require accuracy. *See* 15 U.S.C. § 1681i(a)(1)(A). But courts—including judges on this court—have held that claims under § 1681i require an inaccuracy in the report. *See Reed v. Innovis Data Sols., Inc*., 2021 WL 3290370, at *2 (N.D. Tex. Aug. 2, 2021) (Starr, J.) ("[T]o plead a claim that Innovis violated section 1681i, Reed must show that Innovis failed to change inaccurate information." (footnote omitted)); *Shigenaga v. Equifax Info. Servs., LLC*, 2021 WL 764029, at *3 (N.D. Tex. Feb. 26, 2021) (Brown, J.) ("To succeed under either section [1681e(b) or 1681i, plaintiff] must prove her consumer report included inaccurate information."); *Becci v. Equifax Info. Servs. LLC*, 2020 WL 7771204, at *3 (N.D. Tex. Dec. 30, 2020) (Scholer, J.) (same); *Coyle v. Experian Info. Sols., Inc*., 2020 WL 3052228, at *2 (N.D. Tex. June 7, 2020) (Lynn, C.J.) ("To prevail on a claim 'under either Section 1681e(b) or Section 1681i, [a plaintiff] must prove that [her] consumer reports included inaccurate information.'" (alterations in original) (citation omitted)); *Hammer v. Equifax Info. Servs., LLC*, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019) (Cummings, J.), *aff'd*, 974 F.3d 564 (5th Cir. 2020) (same); *Norman*, 2013 WL 1774625, at *4 (Boyle,

J.) (same); *see also DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.").

Absent contrary controlling law, the undersigned joins the other judges of this court[7] who have held that § 1681i requires a plaintiff to plead that the report was inaccurate. Accordingly, for Boothe to plausibly plead his claims against TransUnion under § 1681e(b) and § 1681i, he must plead sufficient facts for the court to draw the reasonable inference that TransUnion's credit report was inaccurate.[8]

C

Boothe has not plausibly pleaded that TransUnion's report was inaccurate.[9]   At

---

[7]Although decisions of other judges of this court are not binding as the "law of the district," the undersigned "invariably gives serious and respectful consideration to the decisions of other judges of this court on questions of law—and typically follows them because they are usually correct and because predictability in such matters is desirable." *SEC v. Cuban*, 798 F.Supp.2d 783, 788 (N.D. Tex. 2011) (Fitzwater, C.J.).

[8]Boothe maintains that his § 1681i claim cannot be dismissed until he obtains discovery that would enable him to determine whether TransUnion conducted a reasonable investigation.  The court declines to accept this contention.  Because an inaccuracy is a necessary element of a § 1681i claim, Boothe's failure to plead this essential element warrants dismissing this claim before Boothe conducts discovery on a separate element.

[9]The court does not reach TransUnion's contention that Boothe has failed to plausibly plead that TransUnion willfully violated the statute.  Boothe has alleged willful conduct under § 1681n for all of his claims.  Section 1681n authorizes, *inter alia*, punitive damages for willful (as opposed to negligent) *violations* of the statute.  *See* 15 U.S.C. § 1681n. Because the court holds that Boothe has not plausibly alleged that there was an inaccuracy in TransUnion's report, and, therefore, no violation of the statute, the court need not address whether Boothe has plausibly pleaded a willful violation.  *See, e.g., Messano v. Experian Info. Sols., Inc.*, 251 F.Supp.3d 1309, 1316 (N.D. Cal. 2017) ("Since the Court finds that dismissal is warranted given Plaintiff's failure to plead inaccuracy, the Court does not reach

bottom, Boothe's central argument is that he was not "late" because Nationstar's payoff quote contained a promise that Nationstar would not report him to credit agencies as late on his October monthly payment if Boothe paid the payoff quote by the deadline Nationstar specified.  In support, Boothe alleges that he made timely mortgage payments; he requested and received a payoff quote from Nationstar in October 2019; Nationstar's payoff quote stated that he would not be considered "late" on his monthly payments if he paid the payoff amount by November 7; and that he paid his payoff on November 1—thereby precluding Nationstar from considering his October payment "late."  Boothe's central argument is misplaced.

Two of his allegations are directly contradicted by exhibits attached to his complaint.[10]

_____

the issue of willfulness or negligence.").

[10]The court may consider the contents of an exhibit that contradicts the pleading.  And in the case of conflict, the exhibit controls.  *See Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 528 (5th Cir. 2018).

Boothe contests any reliance on *Smit*, however, contending that there is no conflict between his complaint and Exhibit A.  He posits that he is not relying only on the payoff quote to show that the credit report was an inaccurate, but also on the payoff quote and "inconsistent information provided by Nationstar regarding refinancing or a payoff payment, along with the reporting of a new Nationstar Mortgage 5856****. . . [which] creates an inference that" the credit report was inaccurate.  P. Mem. at 8.

Boothe also relies on *Waller v. Hanlon*, 922 F.3d 590 (5th Cir. 2019).  In *Waller* the plaintiffs alleged that an autopsy report showed that a decedent was not holding a gun when he was shot.  *Id.* at 600.  But the autopsy report did not state that the decedent was holding a gun when he was shot—it only described his wounds.  *Id.*  The court distinguished *Smit* (which found clear conflict between the pleading and an exhibit) and held that the plaintiffs were alleging that the autopsy report created an *inference* that the decedent had not been holding a gun (because of his hand injuries reported in the autopsy).  *Id.*  *Waller* does not support Boothe because his complaint specifically alleges that the payoff quote said that he would not be marked late.  But this assertion is directly contradicted by the payoff quote

The allegation that Boothe made timely monthly payments is contradicted by Exhibit A, which shows that he made payments in July, August, and September—but not in October. *See* Compl., Ex. A.[11]  Exhibit A reflects that Boothe did not timely make his October mortgage payment.

Next, the allegation that the payoff quote stated that Boothe would not be considered "late" on his monthly payment is contradicted by Exhibit B to the complaint.  The payoff quote does not state that Boothe's payment would not be marked "late" if he made the payment before the November 7 due date.  Instead, the payoff quote states that "[i]f your payoff payment is received after your payoff date and a [monthly] payment has not been made, then a *late charge* may be assessed."  Compl., Ex. B, at 2 (emphasis added).  The payoff quote only mentions a potential *late charge*, not whether Boothe's *payment* would be marked as late for credit reporting purposes.  In fact, the payoff quote clearly tells the mortgagee (twice) to continue making scheduled payments—suggesting that Nationstar would consider missed monthly payments to be "late."  *Id.*  Accordingly, the allegation of

_____

itself.  *See* Compl., Ex. B.  *Waller* is therefore inapposite.
    Boothe also cites *Grigoryan v. Experian Information Solutions, Inc.*, 84 F.Supp.3d 1044 (C.D. Cal. 2014), but it is not clear how this case is relevant to the issue.  The portion of the case that Boothe cites discusses authentication issues for exhibits and fact issues created by these exhibits.  *See id.* at 1063-64.

    [11]Boothe does not argue that the TransUnion credit report was inaccurate because he did not owe a payment in October: he argues that the payoff quote suspended the October payment obligation.  The court therefore assumes *arguendo* that a payment was due in October and that, under normal circumstances without the payoff quote, if the payment was not received in October, Nationstar would consider it to be late.

- 10 -

the complaint that the payoff quote promised that Boothe's payment would not be marked "late" until after the payoff was due is contradicted by the payoff quote itself.

The remaining allegations fail to state a plausible claim that the TransUnion report was inaccurate. Removing the contradicted allegations, Boothe's central argument may be that the payoff quote's statement—that late charges may be assessed if Boothe misses his payoff payment deadline—was an implicit statement by Nationstar that it would not consider him "late" to credit agencies. But for the reasons discussed, the court cannot reasonably infer such a statement from the language of the payoff quote. *See Becci*, 2020 WL 7771204, at *3 ("When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents." (citation omitted)).[12]

Boothe's principal argument may also be that the statement caused him *to think* that Nationstar would not mark him late to credit agencies if he paid his payoff amount on time. Boothe has pleaded facts that show that he may have been confused by this statement and thought that it suggested that Nationstar would not assess late charges or consider him "late"

---

[12]Even if the payoff quote statement did contain a promise that *Nationstar* would not mark him late, it is not clear that Boothe would have pleaded a plausible claim that the *TransUnion report* was inaccurate. Judge Starr addressed a factually similar case in *Reed*. There the plaintiff argued that Nationstar had promised that it would not mark her as late on her payments. *Reed*, 2021 WL 3290370, at *1-2. But Judge Starr held that "the [FCRA] does not hold [the credit reporting agency] to promises made between creditors and debtors" and that Nationstar's promise did not bear on the credit agencies' liability. *Id.* at *2. This holding is consistent with a line of authority in other circuits that precludes credit agencies from resolving legal disputes between creditor and debtors. *See, e.g., Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[C]redit reporting agencies are not tribunals. They simply collect and report information furnished by others . . . CRAs are ill equipped to adjudicate contract disputes.").

- 11 -

for credit reporting purposes.  But his claim still fails because the court's inquiry is focused on *the report's* factual inaccuracy, not on whether *Boothe thought* the report was inaccurate.[13] *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) ("[A] plaintiff's required showing is *factual* inaccuracy." (emphasis in original)); *see also Chandler v. Peoples Bank & Tr. Co. of Hazard*, 769 Fed. Appx. 242, 244, 248 (6th Cir. 2019) (holding that plaintiff was late on her payments despite thinking she was not); *Tuttobene v. Trans Union, LLC*, 2021 WL 2188232, at *2 (D. Nev. May 28, 2021) ("A [credit reporting agency] thus does not violate § 1681i(a) by accurately reporting a late payment even if the consumer has a good explanation for why the payment was late."); *Jianqing Wu v. Trans Union*, 2006 WL 4729755, at *4 (D. Md. May 2, 2006), *aff'd*, 219 Fed. Appx. 320 (4th Cir. 2007) ("Plaintiff explains that he had enrolled in the bank's "Assist Program" . . . which he believed excused him from paying the full amount due. Whether or not First USA considered entrance into the Assist Program an agreement not to report Plaintiff's late payments, Plaintiff cannot escape the fact that he paid his account late . . . ." (citation omitted)); *Paul v. Experian Info. Sols., Inc.*, 793 F.Supp.2d 1098, 1101 (D. Minn. 2011) ("Moreover, the reason for the late payment

---

[13]The court has located only one case that has held that a plaintiff's false impression that he had made a timely payment might state a claim for relief—and it was against the furnisher of the information, not the credit reporting agency.  *See Abukhodeir v. AmeriHome Mortg. Co.*, 2021 WL 3510814 (M.D. Fla. Aug. 10, 2021).  *Abukhodeir* is consistent with the present case because the court held that is was "misleading" to report the plaintiff as late, not "inaccurate," and the claim at issue was against the furnisher, not the credit reporting agency. There the plaintiff enrolled in a bank's autopay system.  *Id.* at *4.  The bank, however, failed to process one of the plaintiff's payments.  *Id.*  The court held that the *bank*'s reporting of late payments was "misleading" because the bank was the reason for the late payment.  *Id.*

- 12 -

is not relevant; the statute concerns accuracy.").

Accordingly, the court concludes that Boothe has failed to plead sufficient facts for the court to draw the reasonable inference that his credit report contained inaccurate information, a requirement for pleading a plausible claim under § 1681e(b) or § 1681i.[14]

IV

Boothe opposes TransUnion's motion and requests in the alternative that he be granted leave to amend. The court grants the request.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because Boothe has not stated that he cannot, or is unwilling to, cure the defects that the court has identified, the court grants him 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

---

[14]As discussed above, Boothe also focuses on the "inconsistency" of reporting his 5856**** refinanced loan as timely for October but his 66863**** loan as late. He asserts that "[i]t would be impossible" for him to be timely on his refinanced loan but not on his 66863**** loan. P. Mem. at 7. According to Boothe, this "inconsistency" suggests the report is inaccurate. The court does not agree that this is a true inconsistency because it is possible to miss an October payment for one loan but not the other. Indeed, as Boothe concedes, if a party refinances, his payment for one loan is not due for that month but may still be due for the other loan. Further, it is not clear what relevance this inconsistency has to the question whether his October monthly payment on his 66863**** account was late, beyond his argument discussed in *supra* footnote 10.

- 13 -

* * *

Accordingly, for the reasons explained, the court grants TransUnion's motion to dismiss and also grants Boothe's alternative request for leave to amend.

**SO ORDERED**.

December 1, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 14 -